STATE OF IOWA ex rel. SCHOOL TOWNSHIP OF DOUGLAS TOWN-SHIP, UNION COUNTY, et al., Appellants, v. E. E. KINKADE et al., Appellees.

**QUO WARRANTO: Laches and Acquiescence.** Quo warranto to test
1 the legal organization of a school district may not be maintained when relator delays his action for 14 months after the supposed organization of the district, with full knowledge that the district was financially changing its position on the full assumption that the organization was valid.

**QUO WARRANTO: Costs.** A relator who institutes quo warranto
2 without probable cause is properly chargeable with costs.

*Appeal from Union District Court.*—P. C. WINTER, Judge.

FEBRUARY 7, 1922.

ACTION in quo warranto, to test the legality of the organization of defendant school district, and to oust its officers. The basis of the action is the alleged illegality in organizing the district. The plaintiffs demanded a jury. The trial court sustained defendants' position that plaintiffs had waived a jury trial, and a jury was denied. Trial to the court, which found for defendants, and dismissed the plaintiffs' petition, and taxed the costs to the relators. Plaintiffs appeal. The defendants

have filed a cross-appeal from the action of the court in over-ruling defendants' motion to set aside the order of the trial court granting leave to bring this suit, and to dismiss the case; also from the overruling of defendants' motion to strike an amendment to the petition. The ruling on this motion to dismiss was withheld until the evidence was all in. All the evidence on the trial was offered in support of such motion, as well as on the merits. The motion was not passed on separately, except as the court may have passed on it incidentally, in dismissing the petition. The contention of defendants is that these are but additional reasons why the judgment of the lower court should be affirmed.—*Affirmed.*

*Higbee & McEniry,* for appellants.

*O. M. Slaymaker,* for appellees.

Preston, J.—The defendant district was completely organized March 11, 1920. Fourteen months thereafter, this suit was brought. When the case was originally brought, the plaintiff school township, Charles Ours, and Henry West were named as the only relators. Later, an amendment to the petition was filed, in which ten other persons were added as relators. Plaintiffs claim that the district was illegally organized, in that the boundaries of the newly formed district did not conform to the lines of Subdistrict No. 4 in Douglas Township; that the board of education never approved the action of the county superintendent in fixing the boundaries; that, by so invading the territory of said Subdistrict No. 4, there were only three and one-half sections left in said subdistrict, contrary to the mandatory provisions of the statute. Defendants say, in substance, that relator West requested that District No. 4 be divided in the way it was divided, and that he was not a citizen or landowner in defendant district, and has no interest in the questions involved; and that the other relator, Ours, signed the petition for consolidation and voted at the election for consolidation in favor thereof, and took part in the election of school directors, and was a candidate for director, and took part in the bond election, and voted at the same; that it is not clear from the record whether there were

1. Quo Warranto: laches and acquiescence.

less than four sections left in said subdistrict; that the board of education did approve the action of the county superintendent in fixing the boundaries; that defendant district was properly organized; that plaintiff school township was not authorized by law to act as relator, and that neither it nor West nor Ours could, for the reasons given, act as relators or maintain this action; and that the added relators could not do so, because the amendment attempting to bring them in as such was filed too late, and was filed without the consent of the district court. Such amendment was filed June 21, 1921, which was more than 30 days after April 13, 1921, when Chapter 211, Acts of the Thirty-ninth General Assembly, took effect. This is the fact as to such added relators, but is not so as to the original relators, if such original relators were authorized to act as such and to maintain the action. The act just referred to provides, in substance, that an action in quo warranto, questioning the legality of the organization of a school district, may not be brought after six months, and that, as to districts theretofore organized, it must be brought within 30 days after the taking effect of the act. We do not understand appellees to contend that this statute applies to the relators other than those brought in in June, but that, for other reasons, the original relators may not, as said, maintain the action. They do contend, however, for the act of the legislature, that its passage indicates a policy that such actions must be brought promptly, which, as appellees say, was the law without the statute. We think the record does not show, as contended by appellees, that the board of education did fix the boundaries. As we understand the record, West filed objections before the county superintendent, but he did not reside upon or own land within the proposed boundaries, and he withdrew his objections. Defendants further allege, in a separate division of their answer, that the district was completely organized March 11, 1920; that the board of directors took charge of the affairs of the consolidated district at once after election; that all the old districts recognized the legality of the organization by turning over their funds; that a petition was circulated, and election held, and bonds voted; that taxes were certified and levied by the board of supervisors in the fall of 1920, and paid in 1921; that a central school was maintained

at Cromwell, in said district, at the direction of said directors, during all the school year commencing September, 1920; that architects have been employed and plans and specifications have been prepared for the erection of a new schoolhouse, and that liability has been incurred; that busses have been bought, and other expenses incurred, all with the understanding and on the theory that the district was legally organized, and all with the knowledge, consent, acquiescence, and approval of the relators and of all of the citizens and taxpayers of Union and Adams Counties; that for these reasons the organization of said district has been so recognized, acquiesced in, ratified, and approved that objection cannot now be made thereto; and that those questioning the legality are barred and estopped from doing so.

Several questions are argued by both sides. We are, however, so clearly satisfied that plaintiffs may not maintain the action, because of their laches and acquiescence, that we deem it unnecessary to discuss the other questions argued. It is enough to say that we are satisfied with the findings of the trial court, including the finding that plaintiff waived a jury. We may say, in passing, that, as to the merits, it seems to us that it is doubtful, to say the least, whether plaintiffs made a case entitling them to the relief prayed. Without going into the details of the evidence on the subject, the matters set up by defendants as constituting laches, acquiescence, estoppel, and so on, are, as found by the trial court, sustained. It may be that, as to some of these matters, they have not been established quite as broadly as appellees contend; but in the main they are established, and sufficiently so to sustain appellees' contention.

1. Appellants argue that the defense of laches, acquiescence, or estoppel is not available to the defendants, since they are equitable defenses; and on this they cite 10 Ruling Case Law 395, 396, 397. It may be that the doctrine is invoked more often in equitable actions. But we said in *State v. Alexander*, 129 Iowa 538, 541, that it is well established by authority that laches will defeat such an action (citing *State v. City of Des Moines*, 96 Iowa 521; High on Extraordinary Legal Remedies, Section 631). See, also, to the same effect, 32 Cyc. 1431. It was there said that the court will not lay down any

universal rule in such cases, but will decide whether the delay has been unreasonable or not, from the circumstances of each case. In the *Alexander* case, supra, a delay of 14 months was held, under the circumstances of that case, not to be an unreasonable delay. The circumstances in that case tending to show laches were not as strong as in the instant case. The recent act of the legislature before referred to has now fixed a period of six months in which the action must be brought. Doubtless the purpose of this was to avoid the well recognized fact that delay in such matters necessarily results in confusion. In the instant case, some of the relators, after having signed the petition for the establishment of the district, and having participated in the election, later turn around and take the opposite position, and seek to destroy what they had helped to establish. The case has the appearance of having been brought by relators for private purposes, and not for the benefit of the public or the state. In addition to the laches and acquiescence of relators, the state itself acquiesced in the establishment of the district for 14 months, and in the legality of it, before any objection was made by relators. Acts have been done by the district and money has been expended in reliance thereon which will be lost to the people, if there should now be a dissolution. Under the circumstances here shown, there are intervening rights and equities, and to now dissolve the district would result in confusion, and serious consequences would follow. This being so, the relief asked should be denied. *State v. Hall,* 190 Iowa 1283; *State v. Rowe,* 187 Iowa 1116, 1129; *State v. City of Des Moines,* 96 Iowa 521; *Clement v. Everest,* 29 Mich. 19, 23; *Attorney General v. City of Methuen,* 236 Mass. 564 (129 N. E. 662).

Perhaps we should not spend any more time on this feature of the case, and as to whether the estoppel applies to both sets of relators. It may not, however, be out of place to refer to the points made in this respect. Appellees contend that the original relators have no standing, because the plaintiff school township is not a person or citizen authorized to bring such an action, under Code Section 4316. They cite *Waddell v. Board of Directors,* 190 Iowa 400. They also say that West may not complain, because it was at his express request that the subdivision of the subdistrict was made. As to others claiming to be relators,

who came in on June 21, 1921, it is claimed by appellees that they did not comply with Code Section 4316, by getting the consent of the court or a judge to commence the action, and further, that the 30 days had then elapsed after the passage of Chapter 211, before referred to. It seems to us unnecessary to discuss these last mentioned features of the case, because we think that all the so-called relators were guilty of laches, and that they acquiesced for more than a year. The board of directors began acting as such soon after the election; they had frequent meetings; the matter was generally talked in the neighborhood; there was another election on the question as to issuance of bonds; taxes were levied and paid; as we understand it, the old schoolhouses were abandoned and the school was held in Cromwell, and so on. All the circumstances shown were such that relators and all the residents in the district must have known of the situation.

2. Appellants complain that the court taxed the costs to relators. Code Section 4318 provides that an action of this character may be brought upon the relation of a private indi-

2. QUO WARRANTO: costs.

vidual, and that the order allowing him to do so may require that he shall be responsible for costs, in case they are not adjudged against the defendant, and that in other cases the payment of costs shall be regulated by the same rule as in criminal cases. In the instant case, the order allowing plaintiffs to prosecute did not require that they should pay the costs. In that case, the payment of costs, under the last clause of the statute, is governed by the rule in criminal cases. Appellants say that the costs should have been taxed to the State. We have seen that there are some indications that the action was brought by relators to carry out their private ends. The rule in criminal cases is that, if the prosecution fails, the court trying the case may tax the costs to the prosecuting witness, if satisfied from all of the circumstances that the prosecution was malicious or without probable cause. Code Section 5275. The taxing of the costs to relators is, in effect, a finding by the court that the prosecution was without probable cause. Appellees say that such finding by the trial court has the force of a jury verdict. However this may be, we are not disposed to compel the State to pay these costs.

3. . It seems unnecessary to consider or determine the appeal by appellees. The main point is that the court did not rule on their motion to dismiss. The case was dismissed on the merits.

The judgment is—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.